## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

JARIIAN BROWN                                                          PLAINTIFF

v.                                                          No. 3:22-cv-21-BJB

DWAYNE CLARK,                                                          DEFENDANT
*Director of Metro Corrections,*
*individually and in his official capacity*

* * * * *

## OPINION & ORDER

The Covid-19 pandemic has spun a web of litigation about all sorts of government regulations—including, perhaps most notably, those requiring vaccination. *See, e.g.*, *NFIB v. OSHA*, 142 S. Ct. 661, 666 (2022) (invalidating mandate for employees subject to OSHA regulation); *Biden v. Missouri*, 142 S. Ct. 647, 653 (2022) (upholding mandate for healthcare workers subject to HHS regulation). Covid has also generated numerous cases on prison conditions and compassionate release. *See, e.g., Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) (deliberate indifference and reasonable prison precautions); *United States v. Majors*, No. 3:09-cr-47-4, 2021 WL 2809112, at *2 (M.D. Tenn. July 6, 2021) (natural immunity, vaccine access, and compassionate release); Chad Flanders, *COVID-19, Courts, and the "Realities of Prison Administration" Part II: The Realities of Litigation*, 14 ST. LOUIS U. J. HEALTH L. & POL'Y 495, 501–512 (2021) (reviewing pandemic-related deliberate-indifference caselaw).

Sometimes these strands intersect. A district court in California, for example, ruled that a prison violated the Eighth Amendment by *not* mandating all employees be vaccinated. *Plata v. Newsom*, 562 F. Supp. 3d 359, 374 (N.D. Cal. 2021), *vacated*, No. 21-16696, 2022 WL 1210694 (9th Cir. Apr. 25, 2022). While most vaccine-related cases have addressed the authority to *require* someone to get vaccinated, this case raises the converse question: the discretion to *decline* someone's request to get vaccinated. The *pro se* plaintiff here alleges his prison won't administer the vaccine—and has failed to adequately mitigate Covid risks in many other ways as well. The Constitution generally doesn't dictate which vaccines a prison must administer, though its decision might conceivably be relevant to making out the (demanding) claim of deliberate indifference to prisoner health and safety. In this case, however, the Court dismisses the complaint on initial screening because the plaintiff's deliberate-indifference and other theories of liability all fail to state a claim that would support relief.

1

## I. Background

*Pro se* Plaintiff Jariian Brown, a pretrial detainee at the Louisville Metro Department of Corrections, sued LMDC Director Dwayne Clark under 42 U.S.C. § 1983 for failing to vaccinate him or take other Covid precautions. Brown argues this amounted to deliberate indifference to Brown's safety that violated the Eighth and Fourteenth Amendments, that his bail was excessive, and that he should be released on home confinement. Complaint (DN 1) at 4–6.

Specifically, Brown alleges that when he was "processed" into LMDC he was not given either a tuberculosis or a Covid test, even though Covid is present and spreading quickly. Despite requesting the Covid vaccine, however, he has not received it. *Id.* at 4. He also claims LMDC is not "following 6 feet distancing or proper quarantining." *Id.* at 5. And despite multiple requests for cleaning supplies, given his overcrowded and dirty dorm and "flooded" shower, he received only a broom. *Id.* at 4. He further alleges that his bail is so high, neither he nor his family can pay it. *Id.* As a result, he requests home incarceration and $200,000 in damages. *Id.* at 6.

## II. Analysis

When a prisoner sues a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the case if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When screening the complaint, the Court must construe it in the light most favorable to the plaintiff and accept well-pled allegations as true, but has no obligation to accept "fantastic or delusional" allegations as true. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quotation omitted). And while a reviewing court liberally construes *pro se* pleadings, *id.*, a complaint must include "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Conditions of Confinement

Brown alleges that Director Clark violated his Eighth and Fourteenth Amendment rights by exposing him to various unconstitutional conditions of confinement at LMDC: not testing him for tuberculosis or Covid, not giving him a Covid vaccine, not providing daily cleaning supplies for his overcrowded cell, and potentially exposing him to Covid due to lack of social distancing and quarantining.

**1. The Deliberate-Indifference Standard.** The Eighth Amendment, which Brown relies on, protects against "cruel and unusual punishments." U.S. Const. amend. VIII. For persons who are incarcerated and cannot care for themselves, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When prison officials are "deliberate[ly] indifferen[t]" to a prisoner's "objectively ... serious" needs,

2

that violates the Eighth Amendment. *Id.* at 834 (quotations omitted). Deliberate indifference includes objective and subjective aspects: (1) a substantial (objective) risk of serious harm and (2) the official's (subjective) knowledge and disregard of that substantial risk. *Id.* Deliberate indifference "entails something more than mere negligence." *Id.* at 835. Instead, the Eighth Amendment standard is akin to criminal recklessness, requiring actual awareness of the substantial risk. *Id.* at 839–40.

But the Eighth Amendment applies only to "those *convicted* of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (emphasis added). It "does not apply to pretrial detainees," like Brown. *Greene v. Crawford County*, 22 F.4th 593, 605 (6th Cir. 2022). Instead, "[p]retrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment," which incorporates similar protections against custodians of pretrial detainees. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

In *Kingsley v. Hendrickson*, 576 U.S. 389, 391–92 (2015), the Supreme Court held that a Fourteenth (rather than Eighth) Amendment excessive-force claim by a pretrial detainee needn't establish that the officer was subjectively aware that the use of force was unreasonable. Did that decision also jettison the subjective-intent element for all Fourteenth Amendment deliberate-indifference claims brought by pretrial detainees in other contexts? The courts are deeply split on this question. *See Westmoreland v. Butler County*, 29 F.4th 721, 727 (6th Cir. 2022) (gathering cases). The Sixth Circuit recently decided that the Supreme Court indeed replaced the former test with an objective inquiry that asks whether an official "acted deliberately (not accidentally) and 'recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 728 (quoting *Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021)). This reckless-disregard standard is still higher than negligence, but lower than criminal recklessness; like civil recklessness, the official doesn't have to actually be aware of the harm. *Id.*

This difference, however, should rarely matter in the Covid context: what prison official has been hiding under a rock since March 2020 and remains unaware of the risks Covid poses to prisoners? *See Cameron v. Bouchard*, 815 F. App'x 978, 984–85 (6th Cir. 2020) (even assuming *Kingsley*'s objective standard applies, prison's steps to protect against Covid were reasonable and thus not deliberately indifferent). Instead, the analysis turns on whether the officials responded to that risk in an objectively reasonable manner. *Wilson*, 961 F.3d at 840. Officials may have acted reasonably even if the harm later materializes and more effective approaches were available. *Id.* at 840, 844.

**2. Covid Vaccination.** No decision, as far is this Court is aware, has held that a prison or official was deliberately indifferent by not providing a vaccine when one was requested. No provision of the Constitution expressly confers a general right to be vaccinated; nor does any longstanding "history and tradition" create any such unenumerated right. *See generally Washington v. Glucksberg*, 521 U.S. 702, 721

(1997). Standing alone, therefore, a prison's decision not to inoculate inmates does not violate the any provision of the Constitution. *See Grissom v. Rohling,* 431 F. App'x 693, 696 (10th Cir. 2011) (denying an inmate a vaccine available to other inmates does not alone constitute an Eight Amendment violation).

Under pandemic circumstances, however, does denying a vaccine amount to "deliberate indifference"? That is a difficult standard to meet in the prison context, even under *Kingsley*'s modified standard. *See, e.g., Reilly v. Vadlamudi,* 680 F.3d 617, 627 (6th Cir. 2012); *Cadena v. El Paso County,* 946 F.3d 717, 728 (5th Cir. 2020). Courts of appeals have repeatedly declined to conclude that prison officials' responses to the risks of Covid were deliberately indifferent—even if the case numbers are high and the officials could have done more.[1] This is partially because courts shouldn't make a habit of second-guessing prison administrators, especially in their handling of an evolving public health crisis. *See* Flanders at 503–512 (collecting examples of courts deferring to prison administrators' choice of precautions). The reasonableness inquiry is deferential and fact specific, taking account of the severity of the harm and the available methods of mitigation. *See Swain,* 961 F.3d at 1288 (officials "doing their best"). So the Eighth and Fourteenth Amendments don't supply any per se constitutional entitlement to vaccination; any deliberate-indifference claim would depend on a plaintiff's particular circumstances and the government's specific response.

In what appears to be the most analogous case, a district court in California ruled that the entire state prison system was deliberately indifferent for not mandating that employees get vaccinated, given the evolving nature of the pandemic. *Plata,* 562 F. Supp. 3d at 367–74 (N.D. Cal. 2021). The Ninth Circuit quickly reversed. *Plata v. Newsom,* No. 21-16696, 2022 WL 1210694 (9th Cir. Apr. 25, 2022). It held that even if a vaccine mandate was more effective, efforts to offer vaccines, testing, protective gear, and other precautions made it impossible to conclude that the decision not to mandate vaccinations for the entire prison system was deliberately indifferent. *Id.* at *1–2.

---

[1] *See Wilson,* 961 F. 3d at 841 (BOP acted reasonably by cleaning, testing, quarantining, and educating, and its efforts to improve mitigation showed it was not deliberately indifferent); *Cameron,* 815 F. App'x at 984–85 (same); *Hill v. Whitmer,* No. 20-1835, 2021 WL 3877920, at *2 (6th Cir. Apr. 14, 2021) (testing, quarantine, and limits on gathering, even in packed prison, not deliberately indifferent); *Swain v. Junior,* 961 F.3d 1276, 1287–89 (11th Cir. 2020) (screening, testing, and cleaning, even without social distancing, not deliberately indifferent); *Valentine v. Collier,* 993 F.3d 270, 277, 282 (5th Cir. 2021) (regular cleaning, protective gear, and testing in packed unit was not deliberately indifferent); *Marlowe v. LeBlanc,* No. 20-30276, 810 F. App'x. 302, 305–06 (5th Cir. Apr. 27, 2020) (masks, cleaning, and distancing not deliberately indifferent).

Applying the deliberate-indifference standard here, the Court must ask whether Brown has alleged the prison conditions posed a substantial risk of serious harm and that the defendants "acted deliberately … and recklessly in the face of [that] unjustifiably high risk of harm" by not vaccinating him.  *Westmoreland*, 29 F.4th at 727.  At least in the Covid context, courts have held that prisoners face a substantial risk of infection that amounts to "serious harm," without much if any attention to plaintiffs' particularized risk of infection or harm.  *See, e.g., Wilson*, 961 F.3d at 840; Flanders at 502 (noting widespread agreement on this point).[2]

But has Brown alleged that the defendants' failure to administer a Covid vaccine indicates they acted recklessly in response to the risks posed by Covid?  Even assuming vaccination is the best method of mitigation (as Brown plausibly implies), it is unlikely to stand as the *only* reasonable option available to prison officials.  *See Wilson,* 961 F. 3d at 840.  Particularly for detainees incarcerated many months after vaccines became freely available to the public.  All of which implies that refusing a vaccine request, by itself, would not support a claim that officials "consciously 'disregarded the risk' to inmate health and safety."  *Ahlman v. Barnes*, No. 20-55568, 2020 WL 3547960, at *9 (9th Cir. June 17, 2020) (Nelson, J., concurring in part and dissenting in part) ("prison took steps to mitigate the risk of infection by increasing internal safety procedures," indicating it was not deliberately indifferent).  Which facilities administer vaccines—and when and how they do so—are complex questions that administrators continue to grapple with.  *See, e.g., Plata*, 2022 WL 1210694, at *2.  As Americans understand all too well by now, efforts to publicize, store, and deliver available vaccines to different populations are complicated.  A county jail's lack of vaccination-on-demand doesn't necessarily signify that officials consciously disregarded Covid risks.  Indeed, by acknowledging the range of mitigation measures available to the prison, Compl. at 4–5, Brown undermines any claim that vaccination is constitutionally required regardless of other measures.  So Brown's complaint that the prison hadn't yet administered a requested vaccine dose, standing alone, does not

---

[2] Typically, the "inadequate medical care analysis focuses on the particular risk of [harm] posed [to] the specific prisoner, rather than on the generalized threat" of the risk.  *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001); *see also Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) ("the seriousness inquiry focuses on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.") (quotation omitted); *Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016) (must show particularized risk of harm through specific threats).  Previous decisions of the Sixth Circuit and other courts from earlier in the pandemic, however, didn't parse plaintiffs' individualized risks to a virus that was fast spreading and little understood.  *See, e.g., Wilson*, 961 F.3d at 840 (holding "the objective prong is easily satisfied" because "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.").  Although some courts have questioned the persistence of this approach in Covid litigation, *see Sanders v. Macauley*, No. 1:22-cv-18, 2022 WL 1183425, at *15 (W.D. Mich. Apr. 21, 2022) (noting that "much changed between June 2020 and December 2021," yet plaintiffs didn't allege "conditions that make them medically vulnerable"), Brown's claims fail regardless.

plausibly suggest that the defendants consciously disregarded the risks posed by Covid.

**3. Other Covid Mitigation Measures.** Brown also complains about other mitigation steps that LMDC hasn't taken. In addition to his vaccination complaint, Brown alleges that Director Clark also violated the Constitution by failing to perform Covid-19 and tuberculosis testing, "not following 6 feet distancing or proper quarantining," and subjecting him to overcrowded and unsanitary conditions without proper sanitizing equipment other than a broom. Compl. at 4–5. But this does not state a claim that Clark "recklessly failed to act reasonably to mitigate the risk." *Brawner*, 14 F.4th at 597. He fails to do so for at least three reasons.

*First*, Brown doesn't allege that LMDC is doing *nothing* to mitigate the risk of Covid. Instead, he lists several things the prison is not doing that he thinks they should. Compl. at 4–5. Despite his understandable complaints about overcrowding and flooding, Brown doesn't actually allege that he lacks means of protecting himself. As noted, prisons have wide discretion to address Covid even if their means aren't the ones Brown would prefer or even the most effective. *See Wilson,* 961 F. 3d at 840, 844. Indeed, other decisions from this District have reached the same conclusion with respect to the same facility. *See Dawson v. Louisville Metro Department of Corrections*, No. 3:20-cv-P856, 2021 WL 2149211, at *3 (W.D. Ky. May 26, 2021) (allegations that LMDC jail wasn't social distancing, quarantining, or testing in crowded jail was insufficient for deliberate indifference).

*Second*, Brown doesn't allege whether these failings are the result of LMDC-wide policies that Director Clark is responsible for, or just failings by particular officials in Brown's particular location, or instead policies decided outside this facility entirely. *See Brittain v. Dickerson*, No. 15-2823, 2016 WL 4402066, at *7 (W.D. Tenn. Aug. 18, 2016) (plaintiff did not allege a specific defendant who had anything to do with his medical care). In fact, while Clark is the named defendant, he is not tied to the factual allegations at all. *See Moore v. Washington*, No. 1:20-cv-1184, 2021 WL 508304, at *6 (W.D. Mich. Feb. 11, 2021) ("Plaintiff fails to specifically mention any of the Defendants by name in the body of his complaint," and "fails to allege any specific wrongdoing on th[e] part" of the prison director). Without allegations regarding Clark's own decisions, it is difficult to assess whether those decisions were deliberately indifferent.

*Third*, Brown doesn't allege any harm stemming from the prison's alleged failings. It's clear enough that Brown fears catching Covid. But absent an allegation of harm, Brown's "speculative fea[r]" is insufficient. *Dawson,* 2021 WL 2149211, at *3*; see also Moore*, 2021 WL 508304, at *6 ("Nor does Plaintiff allege specific incidents showing that he was harmed by Defendant[s'] conduct, or even whether he was actually infected with COVID-19, or merely suffered from fear of becoming infected."); *Brittain*, 2016 WL 4402066 at *7 ("speculative fears" are insufficient to state a claim for deliberate indifference). Nor does Brown offer any basis to infer he bears a

particularized risk of Covid infection or suffering.  Given Brown's bare-bones allegations about what he would like the prison to do, it is impossible to conclude that Clark was deliberately indifferent to his risk of serious harm from Covid-19.

**4.  Failure to Test for Communicable Diseases.**  Relatedly, Brown says the prison's failure to test him for Covid and tuberculosis during his admittance into the jail violated the Constitution.  Nothing in the text of the Constitution or precedents interpreting it, however, compels prison officials to test asymptomatic detainees before admission.  Even assuming "the medical standard of care might require" testing in these circumstances, "this does not mean those procedures are required … to pass Eighth Amendment scrutiny." *Glossip v. Gross,* 576 U.S. 863, 886 (2015).

True, prison officials may not be "deliberately indifferent to the exposure of inmates to a serious, communicable disease." *Helling v. McKinney,* 509 U.S. 25, 33 (1993). *See, e.g.*, *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (medical response required for asthma attack indicated by "wheezing, difficulty breathing, [and] tightness in the chest," symptoms that "are quite obvious and recognizable even to a lay person"); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–311 (6th Cir. 2005) (medical attention required where detainee "demonstrat[ed] the classic signs of an impending heart attack.").

But Brown doesn't allege LMDC failed to treat an obviously ill inmate; he contends the Constitution compels a particular medical approach to detainees who (like him) are asymptomatic or undiagnosed for a particular illness.  If a "layperson could not easily determine [whether a detainee] needed a doctor and what harm he suffered from a delay in treatment," then under the Sixth Circuit's precedent this is not an "obviously serious medical need" triggering the Eighth Amendment. *Martin v. Warren County*, 799 F. App'x 329, 339 (6th Cir. 2020).

Here, Brown does not make any claim that he himself suffered from Covid or tuberculosis.  Nor does he allege that he exhibited symptoms from which a lay person would "recognize [his] ne[ed] for a doctor's attention." *Harrison*, 539 F.3d at 518 (quotation omitted).  Instead, he claims a free-standing constitutional right to testing (of himself and presumably others as well) as a predicate to lawful detention.  Compl. at 4–5.  But the Supreme Court has explained that a prison's negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976).  And the Sixth Circuit similarly has held that "allegations of … negligent diagnosis … fail to state an Eighth Amendment claim." *Jennings v. Al-Dabagh*, 97 F. App'x 548, 549–50 (6th Cir. 2004).

Even if mass testing might be an entirely logical and sensible policy for prisons to adopt during a pandemic, nothing indicates the *Constitution* requires the testing of asymptomatic inmates upon arrival. *See Williams*, 961 F.3d at 834 (asymptomatic

arrivals not tested for Covid); *Dodson v. Wilkinson*, 304 F. App'x 434, 437, 441 (6th Cir. 2008) (plaintiff was not tested for Hepatitis C upon incarceration); *Perry v. Scott*, No. 3:17-cv-234, 2020 WL 714116, at *7–8 (E.D. Tenn. Feb. 12, 2020) (defendant not required to conduct skin tests for tuberculosis on incoming inmates).

And as with the other precautions Brown demands, he hasn't stated any harm he suffered or treatment he needed as a result of this prison's policy. *See Dawson*, 2021 WL 2149211, at *3 (failure to allege a harm "other than his fear of contracting COVID-19" is insufficient). So to the extent Brown is claiming—separate from his deliberate-indifference claim—that the Constitution required the prison to test him—this claim fails too.

**5. General Incarceration Conditions.** Brown also claims that the general conditions of his incarceration—including shower flooding, foul odor, crowded rooms, and inadequate access to cleaning supplies—violate the Eighth Amendment. This claim isn't cognizable.

In addition to deliberate indifference, the Eighth Amendment also protects against "extreme deprivations" of humane incarceration conditions. *Agramonte v. Shartle*, 491 F. App'x 557, 559–60 (6th Cir. 2012) ("Harsh and uncomfortable prison conditions do not automatically create an Eighth Amendment violation …. Rather, 'extreme deprivations' must be alleged.") (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). Although the Fourteenth Amendment, rather than the Eighth Amendment, applies to pretrial detainees, the standards are identical in this context. *See Ellis v. Pierce County*, 415 F. App'x 215, 217 (11th Cir. 2011) ("no practical difference" between Eighth and Fourteenth Amendment standards in challenges to conditions of confinement); *Schoelch v. Mitchell*, 625 F.3d 1041, 1046–47 (8th Cir. 2010) (applying "extreme deprivation" standard under Fourteenth Amendment). "[O]vercrowding is not, in itself, a constitutional violation" under the Eighth Amendment, unless it results in "an unconstitutional denial" of basic needs. *Agramonte*, 491 F. App'x at 560. "While crowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities." *Id.* at 559 (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Among these necessities are food, clothing, shelter, sanitation, and medical care. *Id.* at 560; *Farmer,* 511 U.S. at 832.

Brown may not be able to clean his cell himself, and the Court accepts as true his allegations that it is filthy. But this, like the claims in *Agramonte*, doesn't indicate that overcrowding "impeded efforts to identify inmate medical or mental health needs and provide even rudimentary care." 491 F. App'x at 560 (distinguishing overcrowding described in *Brown v. Plata*, 563 U.S. 493, 520–21 (2011)). That is, the overcrowded and dirty conditions Brown alleged do not amount to a cognizable claim that the cell is so unsanitary as to cause him harm. Life in jail isn't the most comfortable, to be sure. But the unpleasant picture drawn by Brown doesn't show the LMDC has actually harmed him by withholding life's most basic necessities.

## B. Excessive Bail

Brown also alleges that Clark violated the Eighth and Fourteenth Amendments because Brown's "bail is set so high that my family nor am I able to pay it." Compl. at 4. Brown does not explain how Clark, the Director of LMDC, could be responsible for the amount of bail which was set for him. Nor does he say what if any opportunities he had to raise this objection in state court, where he states that the criminal case against him is still pending. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. *See Younger v. Harris*, 401 U.S. 37, 44–45 (1971). When a person is the target of an ongoing state action involving important state matters, he cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir. 1988). The federal court should abstain if: (1) state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Because Brown's state criminal case is apparently still active, all three factors supporting abstention are present. Whether his bail is excessive is the subject of "state criminal proceedings," which obviously "involve important state interests." *Gonnella v. Johnson*, 115 F. App'x 770, 771 (6th Cir. 2004). Kentucky's state criminal process affords Brown an adequate opportunity to raise his constitutional claims. *See, e.g.*, *Adkins v. Burchett*, No. 0:15-cv-75, 2015 WL 5945647, at *3 (E. D. Ky. Oct. 13, 2015) (declining to interfere with bail amount established in state-court criminal proceeding based on *Younger* abstention). Nor has Brown alleged any additional unusual or extraordinary circumstances sufficient to warrant federal intervention at this time.

Regardless of whether Clark was responsible for setting the allegedly excessive bail, the Court thus must abstain under *Younger* from interfering with Brown's pending state criminal case. *See, e.g.*, *Salyers v. Massamore*, No. 4:13-cv-10, 2013 WL 3872234, at *4 (W.D. Ky. July 24, 2013) (even if excessive-bail claim were not barred by prosecutorial immunity, the court would abstain under *Younger* from interfering with the plaintiff's pending state criminal case); *Dickson v. Sevier County Sheriff's Dep't*, No. 3:08-cv-223, 2008 WL 2811900, at *1 (E.D. Tenn. July 18, 2008) (under *Younger*, excessive-bail claim must be addressed by the state court in the pending state criminal case).

9

Where *Younger* abstention is appropriate, it requires dismissal of those claims without prejudice. *Zalman v. Armstrong*, 802 F.2d 199, 207 n.11 (6th Cir. 1986). The Court, therefore, dismisses this claim without prejudice.[3]

## C. Remedies

In any event, even if Brown's Covid-related claims (which cover everything except his bail allegation) had merit, he would not be entitled to the relief he requests: $200,000 in damages and home incarceration. Compl. at 6.

For damages, Brown sues Clark in his personal capacity. When officials are sued in their personal capacity, qualified immunity will shield them from liability for (1) "discretionary functions" (2) "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Given that no court has decided that prison officials are deliberately indifferent for not providing a vaccine to a pretrial detainee, Clark can't have violated "clearly established" law. The same is true for his other allegations regarding the reasonableness of prison mitigation efforts and more general prison conditions. *See* n. 1 above. In the apparent absence of any factually similar holding, qualified immunity shields Clark from any damages for the deliberate-indifference and prison-condition claims.

Moreover, Brown's remaining request for relief—home incarceration—is not an available remedy under 42 U.S.C. § 1983. *See Johnson v. Louisville*, No. 3:21-cv-P346, 2021 WL 5702424, at *2 (W.D. Ky. Dec. 1, 2021) (dismissing prisoner's claim seeking release from confinement on initial review because "such relief is not available under § 1983"). Instead, habeas is the proper vehicle for a prisoner seeking release from state prison in federal court. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). So Brown is left with no possible remedy even if his claims could otherwise proceed.

---

[3] Or the Court could theoretically dismiss for failure to state a claim. Brown alleges only that his "bail is set so high that my family nor am I able to pay it." Compl. at. 4. A claim of excessive bail, much like an excessive fine, requires allegations that the bail is "grossly disproportional to the gravity of a defendant's offense." *Fields v. Henry County*, 701 F.3d 180, 184 (6th Cir. 2012) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Absent allegations about Brown's crime, his flight risk, or the amount of bail, the Court cannot determine whether the bail was disproportionate. Simply professing the inability to pay bail is insufficient. The *Younger* concerns, however, make it more appropriate to let the state proceedings handle any excessive-bail claim.

## CONCLUSION

On initial review under 28 U.S.C. § 1915A(b)(1), the Court dismisses Brown's Eighth and Fourteenth Amendment claims for failure to state a claim upon which relief may be granted.  The Court also dismisses, without prejudice, Brown's excessive-bail claim under *Younger v. Harris*, 401 U.S. 37 (1971).

Date:

cc:     Plaintiff, pro se

     Defendant

     Jefferson County Attorney

B213.009

Benjamin Beaton, District Judge
United States District Court

August 12, 2022

11